ARTHUR I. WILLNER, State Bar No. 118480
awillner@leaderberkon.com
LEADER BERKON COLAO & SILVERSTEIN LLP
550 S. Hope Street, Suite 1850
Los Angeles, CA 90071
Telephone: (213) 234-1750
Facsimile:  (213) 234-1747

**ATTORNEYS FOR PLAINTIFFS**
MATTHEW GARRETT, Ph.D. and PROFESSOR ERIN
MILLER

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MATTHEW GARRETT, PH.D., an individual, and PROFESSOR ERIN MILLER, an individual,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CHRISTOPHER W. HINE, General Counsel of the Kern Community College District, in his individual and official capacities; THOMAS J. BURKE, Chancellor of the Kern Community College District, in his individual and official capacities; and DOES 1 THROUGH 50, inclusive,<br><br>        Defendants. | Case No.   21-584<br><br><br>**PLAINTIFFS' COMPLAINT;**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Matthew Garrett, Ph.D. and Professor Erin Miller, by and through their counsel of record, and for their Complaint against Defendants Christopher W. Hine, Thomas J. Burke, and DOES 1 through 50, hereby states as follows:

*Leader Berkon Colao & Silverstein LLP*
*Attorneys at Law*

1

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

## INTRODUCTION

1.    A public college or community college district has no business investigating, much less disciplining, a faculty member for publicly criticizing how the district chooses to spend its money.  Yet that is precisely what officials of the Kern Community College District ("KCCD" or the "District") did when they investigated and then disciplined Dr. Matthew Garrett and Professor Erin Miller following their presentation on censorship to a Bakersfield College campus audience on September 12, 2019 in which Dr. Garrett criticized what he regarded as political bias in the District's expenditure of college funds.  To make matters worse, basing their action upon a demonstrably false pretext, Defendants, District officials operating under color of state law, knowingly violated Plaintiffs' First Amendment rights in order to assuage the feelings of and bow to pressure brought by other faculty members who disagreed with Plaintiffs' political viewpoints.  Contrary to the apparent view of Defendants, a faculty member's constitutional rights cannot be bargained away in order to satisfy the interests of competing groups on campus.  Plaintiffs bring this action to hold Defendants accountable for the violations of their rights to free speech and academic freedom and to help bring about the changes needed to end the threat to freedom of expression at the Kern Community College District and on the Bakersfield College campus.

2.    This incident is but one example of what has become a dangerous assault on First Amendment rights on college campuses nationwide by administrators and officials, often egged on by certain faculty members and students, to suppress the speech of anyone with whom they disagree.  Once regarded as the "marketplace of ideas," *Keyishian v. Board of Regents*, 364 U.S. 479, 487 (1967), college campuses in recent years have increasingly devolved into environments where only acceptable viewpoints may be publicly expressed while differing views are subject to investigation and even punishment.  The clear

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

purpose of this illiberal movement is not merely to investigate and discipline those, like Plaintiffs, who have expressed disagreeable ideas, but to chill the speech of and serve as a warning to other faculty members that the better course of action is to self-censor rather than risk suffering adverse employment consequences.

3.     Defendant's actions ignore the fundamental principle that neither students nor faculty "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indpt. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969).  Moreover, the Supreme Court has made it crystal clear that teachers may not be compelled "to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work." *Pickering v. Bd. of Education*, 391 U.S. 563, 568 (1968).  A teacher's criticism of the allocation of school funds falls squarely within this principle.

### JURISDICTION AND VENUE

4.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiffs bring claims under the First and Fourteenth Amendments to the U.S. Constitution, and under 42 U.S.C. § 1983.

5.     This Court has pendent jurisdiction over the state law claims alleged herein because those claims arise out of the same facts supporting Plaintiff's federal claims.

6.     This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure; the requested injunctive relief under 28 U.S.C. § 1343(a) and pursuant to Rule 65 of the Federal Rules of Civil Procedure; the requested damages under 28 U.S.C. § 1343(a); and attorneys' fees under 42 U.S.C. § 1988.

7.     This Court has personal jurisdiction over the Defendants because, upon information and belief, each of the Defendants either resides in the Eastern

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

District of California or has sufficient contacts with the Eastern District of California due to their employment with the Kern Community College District to establish this Court's jurisdiction over them.

8.     Venue is proper under 28 U.S.C. § 1391 in the Eastern District of California because a substantial part of the acts or omissions giving rise to this case occurred within the Eastern District and at least one Defendant resides in the Eastern District.

## **THE PARTIES**

9.     At all times relevant to this action, Plaintiff Matthew Garrett, Ph.D. is and was a resident of Bakersfield, California, an employee of Kern Community College District, and a full-time tenured professor in the History Department at Bakersfield College.

10.     At all times relevant to this action, Plaintiff Erin Miller is and was a resident of Bakersfield, California, an employee of Kern Community College District, and a full-time tenured professor in the History Department at Bakersfield College.

11.     Defendant Christopher W. Hine was and is, at all times relevant to this Complaint, employed as the General Counsel of Kern Community College District. Hine acted under color of state law when he violated Plaintiffs' rights under the First and Fourteenth Amendments when he ordered the investigation into Plaintiffs' speech and when he authored and signed the Administrative Determinations disciplining Plaintiffs and warning them of the potential of further negative repercussions to their employment with the District arising out of their speech, which lies clearly within the First Amendment's protection of freedom of expression and academic freedom.  Furthermore, Defendant Hine knew or should have known that he was violating long-established principles of constitutional law with respect to his conduct.  Hine is sued in his official and individual capacities.

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

12.     Defendant Thomas J. Burke was and is, at all times relevant to this Complaint, employed as Chancellor of Kern Community College District.  As such, he is the District's chief executive officer, responsible for its administration and policymaking, including the conduct alleged herein.  Acting under color of state law, Defendant Burke authorized, acquiesced in, sanctioned, and supported the actions of Defendant Hine.  Furthermore, Defendant Burke knew or should have known that he was violating long-established principles of constitutional law with respect to his conduct.  Defendant Burke is sued in his official and individual capacities.

13.     Plaintiffs are informed and believe that DOES 1 through 50 are other officials and administrators employed by KCCD and Bakersfield College who are responsible for the improper actions against Plaintiff detailed below, or are necessary parties, and Plaintiff will amend this Complaint when their true identities are known.

## FACTUAL BACKGROUND

14.     In addition to their roles as faculty members, Dr. Garrett was the founder, and Professor Miller on the advisory board, of the Liberty Institute[1] – a sanctioned campus organization that aims to promote and preserve freedom of thought and intellectual literacy through the open discourse of diverse political ideas with an emphasis on American ideals and western historical values.  Censorship is anathema to the Liberty Institute.

15.     In April of 2019, controversial stickers were anonymously posted around the Bakersfield College campus, some of which stated such things as "smash cultural Marxism" and as well as other right-of-center viewpoints.  The stickers were removed by campus authorities.  This prompted a public debate, in part through op-ed articles in the local press.  Certain faculty members and students

---

[1] The Liberty Institute has since been renamed The Renegade Institute for Liberty.

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

associated with the campus Social Justice Institute decried the stickers as "racist" and "vandalism" and "hate crimes."  Dr. Garrett, on the other hand, publicly questioned whether the stickers might actually be a protest of sorts against the use of taxpayer funds to advance a one-sided partisan political agenda on campus.  Certain faculty members and students associated with the Social Justice Institute responded to Dr. Garrett's comments by publicly accusing both him and Professor Miller of advocating and enabling white supremacism.

16.    As this controversy progressed, and in lieu of ongoing salvos in the local press, other faculty members sought to arrange a formal public debate between Dr. Garrett on the one hand, and faculty associated with the Social Justice Institute on the other including Professors Andrew Bond and Oliver Rosales.  Since such a debate is precisely the sort of free exchange of ideas that he stands for, Dr. Garrett readily agreed.  Bond and Rosales, however, refused to participate.

17.    On September 12, 2019, with his counterparts having refused to participate, Plaintiff Garrett gave a public lecture on the Bakersfield College campus entitled, "The Tale of Two Protests: Free Speech and the Intellectual Origins of BC Campus Censorship."  The lecture discussed the intellectual justifications and strategies of censorship while drawing parallels to behavior at the college.  Plaintiff Miller delivered the introduction to Dr. Garrett's lecture.

18.    The event took place on campus, and was well-attended by members of the college community and the public.  Professor Miller's introduction lasted approximately ten minutes.  Dr. Garrett's speech lasted approximately one hour and was followed by a vigorous audience question and answer period that lasted about forty-five minutes.

19.    During his lecture, Dr. Garrett discussed issues such as Marxism, free speech, and campus censorship.  A few minutes of his lecture also addressed what in his view was the expenditure of grant funds to the college to promote a partisan

political agenda.  He identified certain Bakersfield College faculty including, among others, Bond and Rosales as the recipients of grant funds that were being directed to further partisan social justice agendas.  He called for an investigation into the expenditure of these funds at Bakersfield College.  Neither Dr. Garrett in his speech nor Professor Miller in her introduction at any time accused Bond or Rosales or anyone else at Bakersfield College of misappropriating these funds or of personally enriching themselves or of any illegal conduct.

20.    Criticism of the manner in which a public college or university prioritizes the expenditure of its funds is core speech protected by the First Amendment.

21.    Although differences of opinion were raised and discussed during the course of the event, at all times the exchange of ideas was civil and respectful.  The September 12, 2019 lecture was an example of precisely the sort of "marketplace of ideas" that American college campuses are intended to exemplify.

### *Bond and Rosales File Formal Complaints with Bakersfield College HR Regarding Plaintiffs' Speech from the September 12, 2019 Lecture.*

22.    In October 2019, Professor Miller filed a public records request regarding various grants.

23.    Plaintiffs are informed and believe that, on October 11 and 19, 2019, respectively, Professors Bond and Rosales file HR complaints against Dr. Garrett and Professor Miller arising out of the September 12, 2019 lecture.

24.    During November 2019, the Bakersfield College administration attempted to mediate the issues involving Dr. Garrett and Professor Miller and Professors Bond and Rosales.  However, rather than serve as a neutral mediator recognizing the First Amendment issues at stake, Bakersfield College Vice President Billie Jo Rice asked Dr. Garrett to stop requesting public records relating

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

to the grants and to remove the publicly posted video of the September 12, 2019 lecture.

25.    On December 3, 2019, Dr. Garrett gave a 30-minute radio interview in which he discussed the collapse of critical thinking in the academy and again criticized the manner in which Bakersfield College faculty were directing grant funds.  Within a few days following this radio interview, Vice President Rice telephoned Dr. Garrett and Professor Miller individually and advised that she was discontinuing the informal resolution process.  She blamed Dr. Garrett's radio interview for this action.

26.    Plaintiffs are informed and believe that, on January 6, 2020, Professor Bond and Rosales filed addendums to their complaints.  To this day, the Bakersfield College administration has steadfastly refused to permit Dr. Garrett and Professor Miller to see these complaints.

### *Defendant Hine, with Defendant Burke's Designation, Knowledge and Acquiescence, Orders an Investigation into Plaintiffs' September 12, 2019 Speech, which Results in Administrative Determinations.*

27.    Plaintiffs are informed and believe and thereon allege that, in early August 2020, Defendant Christopher W. Hine, at the designation and direction of Defendant Burke and perhaps other officials of KCCD and Bakersfield College who will be identified as DOE Defendants, referred Professors Bond and Rosales' formal complaints against Dr. Garrett and Professor Miller for investigation as to whether some of their comments at the September 12, 2019 event constituted "unprofessional" conduct in violation of certain KCCD Board and Administrative Policies.

28.    On or about October 8, 2020, Hine issued a KCCD Administrative Determination containing the following statements and findings:

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

(a)     Professor Miller, in her introduction to Dr. Garrett's speech, made a number of statements implying that both Dr. Oliver Rosales and Professor Andrew Bond "were improperly misusing grant funds and BC resources to finance various 'social justice' platforms."

(b)     Dr. Garrett, during his speech, repeated the above allegations "in greater detail" (i.e., that Rosales and Bond were improperly misusing grant funds).

(c)     Dr. Garrett's and Professor Miller's comments constituted allegations of "financial impropriety" and of misappropriation of grant funds by Rosales and Bond.

(d)     Dr. Garrett and Professor Miller's purported accusations that Rosales and Bond had engaged in "financial improprieties" constituted unprofessional conduct.

(e)     Dr. Garrett and Professor Miller made these accusations against Rosales and Bond "without giving them a reasonable chance to explain the grants in question or defend themselves."

(f)     Dr. Garrett "made the situation worse by repeating the allegations on a radio station after Dr. Rosales and Professor Bond properly complained."

29.    Based upon the above statements and findings, Defendant Hine made the "determination" that Dr. Garrett and Professor Miller "engaged in unprofessional conduct, as defined in Section A.3 of Article Four of the CCA collective bargaining agreement, in their statements and allegations regarding misuse and misappropriation of grant funds by Dr. Rosales and Professor Bond."

30.    Having made the aforementioned "determination," Defendant Hine threatened that "the District will investigate any further complaints of policy and procedure violations and, if applicable, will take appropriate remedial action, including but not limited to any discipline determined to be appropriate.  It is

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

recommended that any videos of the September 12, 2019 presentation by Dr. Garrett with introduction by Professor Miller be removed from all district websites until all inaccurate or misleading allegations have redacted or deleted."  However, notwithstanding his threat of further discipline, Defendant Hine has never identified what statements of fact in Plaintiffs' presentation were inaccurate or misleading; moreover, Plaintiffs deny that any of their statements were inaccurate or misleading.

31.    Defendant Hine's Administrative Determination also invoked the threat of termination of Dr. Garrett's and Professor Miller's employment by referencing California Education Code § 87667, which provides that "A contract or regular employee may be dismissed or penalized for one or more of the grounds set forth in Section 87732."  One of the grounds set forth in Section 87732 is unprofessional conduct, which was precisely the determination found by Defendant Hine against Dr. Garrett and Professor Miller.

32.    In addition, Defendant Hine stated that the Administrative Determination and the Investigator's report will be referred to the President of Bakersfield College "to determine what disciplinary actions and remedial actions are necessary based upon the findings.

33.    Moreover, Defendant Hine further stated in the Administrative Determination that Rosales' and Bond's complaints were whistleblower complaints as provided in BP 7f, and that there are no appeal rights provided under BP 7F or AP 7F.

34.    In short, Defendant Hine reached findings and determinations that were pretextual and false and carried with them the threat of further discipline up to and including termination.  In addition, by classifying Bond and Rosales as so-called "whistleblowers" (defining "whistleblower" in a manner utterly foreign to California law), Defendant Hine left Dr. Garrett and Professor Miller exposed to

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

charges of retaliation and termination in the event they tried to publicly defend themselves.

### *Defendants' Administrative Determination Contained Demonstrably False Assertions of Fact and Findings.*

35.    Each of the statements and findings of the Administrative Determination was demonstrably false.

36.    Neither Dr. Garrett nor Professor Miller, during their presentation of September 12, 2019 (or during Dr. Garrett's radio interview) ever accused Rosales or Bond of improperly misusing grant funds.

37.    Neither Dr. Garrett nor Professor Miller, during their presentation of September 12, 2019, ever accused Rosales or Bond of financial impropriety or misappropriation of grant funds.

38.    Both Rosales and Bond were not denied a reasonable chance to explain the grants in question or defend themselves.  On the contrary, both Rosales and Bond were invited and encouraged to attend the September 12, 2019 event; yet both refused to participate.  Bond and Rosales expressly told other faculty that they chose not to participate in an effort to delegitimize Dr. Garrett's presentation.

39.    Notably, the Administrative Determination makes clear that the majority of Rosales' and Bond's complaints arising out of the September 12, 2019 presentation involved speech by Dr. Garrett and Professor Miller that even Defendant Hine had to conclude was protected under the First Amendment.

40.    Defendants have repeatedly refused to provide Plaintiffs with copies of the Rosales and Bond complaints.

41.    Plaintiffs are informed and believe and thereby allege that Defendants have deliberately taken the position, as a false pretext for the violation of Plaintiffs' rights of free speech and academic freedom, that Dr. Garrett's and Professor Smith's speech regarding the expenditure of grant funds during the September 12,

1    2019 event constitutes defamation as to Rosales and Bond and is therefore not

2    protected under the First Amendment.

3          42.    Defendants' assertion that Dr. Garrett's and Professor Miller's speech

4    is unprotected defamation is demonstrably wrong inasmuch as Plaintiff plainly did

5    not accuse Rosales and Bond of financial impropriety or misappropriation of grant

6    funds and because, to the extent that Plaintiffs discussed the expenditure of grant

7    funds, their comments were both truthful and expressions of their opinions on a

8    subject of significant public interest.

9          43.    Indeed, Plaintiffs are informed and believe and thereon allege that

10   Defendants knew that Plaintiffs comments regarding the expenditure of grant funds

11   were true inasmuch as Bakersfield College President Sonya Christian and Vice

12   President Zav Dadabhoy had written letters of support for a grant directing funds to

13   the Kern Sol News, and that during informal mediation between Professor Miller

14   and Vice President Billie Jo Rice, Rosales openly admitted that Rosales funded the

15   Kern Sol News and intended to continue doing so.  In short, despite knowing that

16   Dr. Garrett's comments were true, Defendants nonetheless issued an Administrative

17   Determination that completely mischaracterized Plaintiffs' statements, and

18   censored, disciplined, and threatened them with further discipline.

19         44.    Plaintiffs are informed and believe and thereby allege that Defendants,

20   in particular Defendant Hine who is an attorney and the KCCD General Counsel,

21   were and are fully aware that Dr. Garrett's and Professor Miller's speech on

22   September 12, 2019 did not meet the elements of defamation and was fully

23   protected under the First Amendment.   Defendants nonetheless deliberately

24   mischaracterized Plaintiffs' speech as unprotected defamation in violation of their

25   First Amendment rights in order to placate or "throw a bone" to Rosales and Bond

26   so that they wouldn't feel their complaints had been effectively dismissed in their

27   entirety as they should have been.

28

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

45. Plaintiffs are informed and believe and thereby allege that Defendants, in particular Defendant Hine as an attorney and KCCD General Counsel, have deliberately misclassified Rosales and Bond as "whistleblowers" under KCCD Board Policy 7F in order to further placate them and enhance their status as complainants while curtailing Plaintiffs' right to free speech and academic freedom.

46. Defendants' deliberate violation of Plaintiffs' First Amendment rights emboldened Bond to respond by sending a mass email to the campus community declaring victory over Dr. Garrett and Professor Miller by announcing KCCD's institutional support further censoring Plaintiffs, declaring Plaintiffs' demonstrably true statements as lies, and implicitly reinforcing Bond's and Rosales' damning allegations on campus that Plaintiffs were supporters of white supremacism.

***Plaintiffs Enjoy the Contractual Right to Academic and Personal Freedom Pursuant to their Collective Bargaining Agreement with KCCD and the KCCD Board Policies and Administrative Policies***

47. KCCD Administrative Policy 7D2A provides, in relevant part, as follows: "Academic Freedom

No provision of this Administrative Procedure shall be interpreted to prohibit conduct that is legitimately related to the course content, teaching methods, scholarship, or public commentary of an individual faculty member or the educational, political, artistic, or literary expression of students in classrooms and public forums. Freedom of speech and academic freedom are, however, not limitless and this procedure will not protect speech or expressive conduct that violates federal or California antidiscrimination laws."

48. The Administrative Determination expressly concedes that none of the allegations by Rosales and Bond, if true, would state a violation of state or federal antidiscrimination laws.

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

49.    Plaintiffs' collective bargaining agreement with KCCD provides, in relevant part, as follows:

"ARTICLE FOUR – PROFESSIONAL EXPECTATION

A. Academic Freedom: The District, the Colleges and unit members will adhere to the following in regard to academic freedom:

    1. Education in a democracy depends upon earnest and unceasing pursuit of truth and upon free and unrestricted communication of truth…

    4. The District recognizes the fundamental right of the faculty member to be free from any censorship or restraint which might interfere with the faculty member's obligation to pursue truth and maintain his/her intellectual integrity in the performance of his/her teaching functions.

B. Personal Freedom

    2. A faculty member shall be entitled to the full rights of citizenship and no religious or political activities, or lack thereof, of any unite member shall be used for purposes of disciplinary action.

### *The Damages Sustained by Plaintiffs*

50.    Each of Defendants' actions described above, relating to the investigation and discipline, and threat of further discipline, was based in whole or in part on Plaintiffs' speech and expressive conduct at the September 12, 2019 event.

51.    Defendants' actions damaged Plaintiffs' reputation, caused them stress and emotional injuries, consumed hours of time during which they have tried to defend themselves, and irreparably injured their constitutional rights to free speech and academic freedom.

52.    As a result of Defendants' actions, Plaintiffs' names are now linked on the Bakersfield College campus with the false accusations that they engaged in unprofessional conduct and the false accusations that they accused Rosales and

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

1  Bond of financial improprieties and financial misappropriation and that they are

2  associated with white supremacist ideology.

3      53.   Plaintiffs have also been irreparably damaged in their profession as

4  college professors.  At a time when college campuses are rife with "cancel culture"

5  and knee-jerk reactions to anything perceived as insensitivity toward so-called

6  marginalized faculty and students, Defendants' actions toward Plaintiffs will likely

7  limit their opportunities should they choose to seek future employment at other

8  colleges or universities.

9      54.   Plaintiffs have diligently attempted to mitigate their damages by

10  consistently defending themselves against Defendants' actions, all to no avail.

11  ## FIRST CAUSE OF ACTION

12  **Violation of Plaintiffs' First Amendment Right to Freedom of Speech through**

13  **Retaliation**

14  **(42 U.S.C. § 1983)**

15      55.   Plaintiffs repeat and reallege each of the allegations contained in

16  paragraphs 1-54 of this Complaint, as if set forth fully herein.

17      56.   By subjecting Plaintiffs, and each of them, to an investigation, an

18  Administrative Determination containing demonstrably and pretextual false

19  statements and findings, disciplinary action, and the threat of further disciplinary

20  action including potential termination, Defendants, by policy and practice, and

21  acting under color of state law, have retaliated against Plaintiffs because of their

22  free expression and have deprived them of their ability to freely express their ideas

23  on issues of public concern at Bakersfield College.

24      57.   Defendants, acting under color of state law, and by policy and practice,

25  knew or should have known that they explicitly and implicitly discriminated against

26  Plaintiffs for exercising their clearly established right to free speech on issues of

27

28

public concern and the right to academic freedom as secured by the First and Fourteenth Amendments to the United States Constitution.

58.     The denial of constitutional rights is irreparable injury *per se* entitling Plaintiffs to declaratory and injunctive relief.  Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, emotional distress, economic injury and irreparable harm.  They are, therefore, entitled to equitable relief and an award of monetary damages.

59.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory and injunctive relief for a finding that Defendants have violated their rights of free speech under the First Amendment, requiring Defendants to publicly rescind the Administrative Determination and its findings, remove from Plaintiffs employment files and from the records of KCCD and Bakersfield College all records pertaining to the Administrative Determination, requiring Defendants to rescind their "recommendation" to remove the unedited video of their September 12, 2019 speech from all District websites, and to withdraw the referral of the Administrative Determination to the President of Bakersfield College for further disciplinary action.

60.     Additionally, Plaintiffs are entitled to monetary damages, including compensatory and punitive damages, and their reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

61.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-60 of this Complaint, as if set forth fully herein.

62.     At all times referenced herein, Plaintiffs were parties to an employment contract with KCCD wherein KCCD and its officers on the one hand and Plaintiffs on the other hand were bound by the terms of their collective

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

bargaining agreement and by the KCCD Board Policies and Administrative Policies.

63.    By virtue of their conduct discussed above, Defendants, acting on behalf of KCCD, violated the terms of this contract by violating Plaintiffs' right to academic and personal freedom concerning their right to free expression.

64.    Plaintiffs are entitled to monetary damages as a result of this breach of contract.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

65.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-64 of this Complaint, as if set forth fully herein.

66.    At all times referenced herein, Plaintiffs were parties to an employment contract with KCCD wherein KCCD and its officers on the one hand and Plaintiffs on the other hand were bound by the terms of their collective bargaining agreement and by the KCCD Board Policies and Administrative Policies.

67.    Plaintiff did all, or substantially all, of the significant things that their contract required them to do.

68.    Defendants, with knowledge that their conduct deprived Plaintiffs of their right to free speech under the First and Fourteenth Amendments to the United States Constitution, nonetheless investigated and subjected Plaintiffs to discipline as described above in retaliation for their exercise of these rights.

69.    By doing so, Defendants did not act fairly and in good faith causing harm to Plaintiffs.

70.    Plaintiffs are entitled to monetary compensatory and punitive damages as a result of this conduct.

///

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

## FOURTH CAUSE OF ACTION

### (Negligence)

71.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-70 of this Complaint, as if set forth fully herein.

72.    Having received complaints from Rosales and Bond regarding Plaintiffs' September 12, 2019 speech, Defendants had a duty to investigate these complaints in accordance with a reasonable standard of care.

73.    Defendants breached this duty of care by failing to conduct a fair investigation into the underlying facts of the complaints.

74.    Defendants' failure to fairly investigate these complaints was the proximate cause of damages sustained by Plaintiffs for which Plaintiffs are entitled to compensatory damages.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

75.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-74 of this Complaint, as if set forth fully herein.

76.    Based on the foregoing facts and circumstances, Defendants deliberately deprived Plaintiffs of their constitutional right to free speech under the First and Fourteenth Amendments to the United States Constitution.

77.    The above actions by Defendants were so outrageous, unjustifiable and intolerable that they caused mental anguish and severe psychological and emotional distress to Plaintiff, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

78.    As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages.

///

///

- 18 -

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

1

## SIXTH CAUSE OF ACTION

2

### (Declaratory Judgment)

3

### (28 U.S.C. § 2201, et seq.)

4

79.    Plaintiffs repeat and reallege each of the allegations contained in

5

paragraphs 1-78 of this Complaint, as if set forth fully herein.

6

80.    An actual controversy has arisen and now exists between Plaintiffs and

7

Defendants concerning Plaintiffs' right under the United States Constitution.  A

8

judicial declaration is necessary and appropriate at this time as to the First Cause of

9

Action above.

10

81.    Plaintiffs desire a judicial determination of their rights against

11

Defendants as they pertain to Plaintiffs' right to speak without being subjected to

12

the threat of further investigation and discipline based on pretextual grounds in

13

furtherance of Defendants' desire to placate and assuage the feelings of members of

14

the Bakersfield College community who disagree with Plaintiffs' viewpoints.

15

82.    To prevent further violation of Plaintiffs' constitutional rights by

16

Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant

17

to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57, declaring that Defendants' conduct

18

described above is unconstitutional.

19

## REQUEST FOR RELIEF

20

WHEREFORE, Plaintiffs Dr. Matthew Garrett and Professor Erin Miller

21

respectfully request that the Court enter judgment against Defendants and provide

22

Plaintiffs with the following relief:

23

1.    A declaratory judgment stating the Individual Defendants' actions

24

described herein violated Plaintiff's right to free speech as guaranteed by the First

25

and Fourteenth Amendments to the United States Constitution;

26

2.    A permanent injunction requiring Defendants to remove from

27

Plaintiffs' employment files and from the records of KCCD and Bakersfield

28

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

- 19 -

College all records pertaining to the Administrative Determination, require Defendants to rescind their "recommendation" to remove the unedited video of their September 12, 2019 speech from all District websites, and to withdraw the referral of the Administrative Determination to the President of Bakersfield College for further disciplinary action.

3.     Compensatory damages against Defendants in their individual capacities, in an amount to be proven at trial to compensate Plaintiffs for the Defendants' violation of their free speech rights and the damages resulting therefrom;

4.     Punitive damages against Defendants in their individual capacities to sanction their deliberate misconduct, and to deter Defendants and others from denying free speech rights to others similarly situated in the future;

5.     Plaintiff's reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, costs of suit and reasonable expenses;

6.     Pre and post-judgment interest at the maximum rate allowable by law; and

7.     Any other relief which this Court may deem just and proper.

DATED: May 24, 2021          LEADER BERKON COLAO &
                             SILVERSTEIN LLP


                             By:  /s/ Arthur I. Willner
                                  Arthur I. Willner, SBN 118480
                                  awillner@leaderberkon.com
                                  Attorneys for Plaintiffs MATTHEW GARRETT,
                                  PH.D. and PROFESSOR ERIN MILLER

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

## <u>JURY TRIAL</u>

Plaintiffs demand a trial by jury on all claims triable by jury in this cause of action.

DATED: May 24, 2021          LEADER BERKON COLAO &
                             SILVERSTEIN LLP


By:  /s/ Arthur I. Willner
     Arthur I. Willner, SBN 118480
     awillner@leaderberkon.com
     Attorneys for Plaintiffs MATTHEW GARRETT,
     PH.D. and PROFESSOR ERIN MILLER

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL