ARTHUR I. WILLNER, State Bar No. 118480
awillner@leaderberkon.com
LEADER BERKON COLAO & SILVERSTEIN LLP
550 S. Hope Street, Suite 1850
Los Angeles, CA 90071
Telephone: (213) 234-1750
Facsimile:  (213) 234-1747

**ATTORNEYS FOR PLAINTIFFS**
MATTHEW GARRETT, Ph.D. and
PROFESSOR ERIN
MILLER

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MATTHEW GARRETT, PH.D., an individual, and PROFESSOR ERIN MILLER, an individual,

Plaintiffs,

vs.

CHRISTOPHER W. HINE, General Counsel of the Kern Community College District, in his individual and official capacities; THOMAS J. BURKE, Chancellor of the Kern Community College District, in his individual and official capacities; and DOES 1 THROUGH 50, inclusive,

Defendants.

Case No. 1:21-cv-00845-DAD-JLT

**DECLARATION OF ARTHUR I. WILLNER IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

*[Filed concurrently with Notice of Motion and Motion for Leave to File an Amended Complaint]*

Date:        January 11, 2022
Time:        9:30 a.m.
Courtroom:  5

Complaint Filed:  May 25, 2021

Leader Berkon Colao & Silverstein LLP
Attorneys at Law

Leader Berkon Colao & Silverstein LLP<br>Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF ARTHUR I. WILLNER

I, Arthur I. Willner, declare as follows:

1.      I am an attorney at law duly licensed to practice before all the courts of the State of California, and the United States District Court for the Eastern District of California.  I am counsel for Plaintiffs Matthew Garrett, Ph.D. and Professor Erin Miller in this action.  If called upon to testify, I would and could do so based upon my personal knowledge as follows.

2.      Attached hereto as Exhibit A is a true and complete copy of Plaintiffs' proposed First Amended Complaint.

3.      On August 24, 2021, I emailed defense counsel David Urban asking whether the defense would withdraw their motion and stipulate to the filing of a First Amended Complaint that was limited to Plaintiffs' federal First Amendment claims and that dropped the state law claims that Defendants' motion found objectionable.  On August 27, 2021, defense counsel emailed me refusing to stipulate to the filing of the First Amended Complaint on the grounds that the amended pleading would contravene California's anti-SLAPP procedures.  I immediately responded citing binding Ninth Circuit law permitting a plaintiff to file an amended complaint in the face of an anti-SLAPP motion.  True and complete copies of these emails are attached hereto as Exhibit B.

4.      In late August/early September 2021, counsel agreed to engage in early ADR in the hope of successfully mediating this case.  The parties agreed upon Phyllis Cheng, Esq. of ADR Services, Inc. as mediator.  A full day mediation was held on October 12 followed by a half-day session on November 1, 2021.  In order to facilitate the mediation without counsel having to spend the time and money working on their respective motions, the parties stipulated to, and this Court continued the hearing on the anti-SLAPP motion to January 4, 2022.

- 2 -

Declaration of Arthur I. Willner in Support of Plaintiffs' Notice of Motion and
Motion for Leave to File First Amended Complaint
Case No. 1:21-cv-00845-DAD-JLT

Unfortunately, despite the diligence and good faith efforts of both sides as well as the mediator, the mediation was unsuccessful in resolving the matter.

5.      Prior to the second mediation session of November 1, 2021, I provided defense counsel with a copy of the proposed First Amended Complaint, which was nearly identical to Exhibit A.). On November 11, 2021, I again emailed defense counsel requesting that they stipulate to the filing of the First Amended Complaint. A true and correct copy of that email is attached as Exhibit C.

6.      I spoke over the phone with defense counsel Urban on November 16, 2021 at which time he again expressed unwillingness to stipulate to the filing of the First Amended Complaint.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed on December 14, 2021 at Los Angeles, California.

Arthur I. Willner

Declaration of Arthur I. Willner in Support of Plaintiffs' Notice of Motion and
Motion for Leave to File First Amended Complaint
Case No. 1:21-cv-00845-DAD-JLT



Declaration of Arthur I. Willner in Support of Plaintiffs' Notice of Motion and Motion for Leave to File First Amended Complaint

Case No. 1:21-cv-00845-DAD-JLT

**Garrett et al v. Hine**

# EXHIBIT A

ARTHUR I. WILLNER, SBN 118480
awillner@leaderberkon.com
LEADER BERKON COLAO &
    SILVERSTEIN LLP
660 South Figueroa Street, Suite 1150
Los Angeles, CA 90017
Telephone: (213) 234-1750
Facsimile:   (213) 234-1747

**ATTORNEYS FOR PLAINTIFFS**
MATTHEW GARRETT, Ph.D. and
PROFESSOR ERIN
MILLER

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW GARRETT, Ph.D., an individual, and PROFESSOR ERIN MILLER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER W. HINE, General Counsel of the Kern Community College District, individually and in his official capacity; THOMAS J. BURKE, former Chancellor of the Kern Community College District, individually and in his official capacity; BILLIE JO RICE, Vice President of Bakersfield College, individually and in her official capacity; SONYA CHRISTIAN, Chancellor of the Kern Community College District, individually and in her official capacity; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No. 1:21-cv-00845-DAD-JLT<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Matthew Garrett, Ph.D. and Professor Erin Miller, by and through their counsel of record, and for their First Amended Complaint against Defendants Christopher W. Hine, Thomas J. Burke, Billie Jo Rice, Sonya Christian, and DOES 1 through 50, hereby state as follows:

## INTRODUCTION

1.     A public college or community college district has no business investigating, much less disciplining, a faculty member for publicly criticizing how the college or district chooses to spend its money, which is indisputably a matter of public concern.  Yet that is precisely what Defendants did when, operating under color of state law, they investigated, disciplined, and retaliated against Dr. Matthew Garrett and Professor Erin Miller following Plaintiffs' presentation on censorship to a Bakersfield College campus audience on September 12, 2019 in which Dr. Garrett criticized what he regarded as political bias in the District's expenditure of college funds.  To make matters worse, basing their action upon a demonstrably false pretext, Defendants knowingly violated Plaintiffs' First Amendment rights in order to assuage the feelings of and bow to pressure brought by other faculty members and administrators who disagreed with Plaintiffs' political viewpoints. Furthermore, Defendants have since engaged in an ongoing pattern and practice of retaliation against Plaintiffs in violation of their First Amendment rights.    Contrary to the apparent view of Defendants, a faculty member's constitutional rights cannot be bargained away in order to satisfy the interests of competing groups on campus. Plaintiffs bring this action to hold Defendants accountable for the violations of their rights to free speech and academic freedom and to help bring about the changes needed to end the threat to freedom of expression at the Kern Community College District and on the Bakersfield College campus.

2.     This incident is but one example of what has become a dangerous assault on First Amendment rights on college campuses nationwide by

administrators and officials, often egged on by certain faculty members and students, to suppress the speech of anyone with whom they disagree. Once regarded as the "marketplace of ideas," *Keyishian v. Board of Regents*, 364 U.S. 479, 487 (1967), college campuses in recent years have increasingly devolved into environments where only acceptable viewpoints may be publicly expressed while differing views are subject to investigation and even punishment. The clear purpose of this illiberal movement is not merely to investigate and discipline those, like Plaintiffs, who have expressed disagreeable ideas, but to chill the speech of and serve as a warning to other faculty members that the better course of action is to self-censor rather than risk suffering adverse employment consequences.

3.      Defendants' actions ignore the fundamental principle that neither students nor faculty "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indpt. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969). Moreover, the Supreme Court has made it crystal clear that teachers may not be compelled "to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work." *Pickering v. Bd. of Education*, 391 U.S. 563, 568 (1968). A teacher's criticism of the allocation of school funds and calls for more transparency on how those funds are spent fall squarely within this principle.

4.      By investigating, disciplining, and retaliating against Plaintiffs for speaking on matters of public concern, Defendants have violated the First Amendment. Plaintiffs now file this First Amended Complaint to vindicate their First Amendment rights.

/ / /

/ / /

- 3 -
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

5.      This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiffs bring claims under the First and Fourteenth Amendments to the U.S. Constitution, and under 42 U.S.C. § 1983.

6.      This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure; the requested injunctive relief under 28 U.S.C. § 1343(a) and pursuant to Rule 65 of the Federal Rules of Civil Procedure; the requested damages under 28 U.S.C. § 1343(a); and attorneys' fees under 42 U.S.C. § 1988.

7.      This Court has personal jurisdiction over the Defendants because, upon information and belief, each of the Defendants either resides in the Eastern District of California or has sufficient contacts with the Eastern District of California due to their current or former employment with the Kern Community College District to establish this Court's jurisdiction over them.

8.      Venue is proper under 28 U.S.C. § 1391 in the Eastern District of California because a substantial part of the acts or omissions giving rise to this case occurred within the Eastern District and at least one Defendant resides in the Eastern District.

**THE PARTIES**

9.      At all times relevant to this action, Plaintiff Matthew Garrett, Ph.D. is and was a resident of Bakersfield, California, an employee of Kern Community College District, and a full-time tenured professor in the History Department at Bakersfield College.

10.      At all times relevant to this action, Plaintiff Erin Miller is and was a resident of Bakersfield, California, an employee of Kern Community College District, and a full-time tenured professor in the History Department at Bakersfield College.

11.     Defendant Christopher W. Hine was and is, at all times relevant to this Complaint, employed as the General Counsel of Kern Community College District. Hine acted under color of state law when he violated Plaintiffs' rights under the First and Fourteenth Amendments when he ordered the investigation into Plaintiffs' speech and when he issued an Administrative Determination disciplining Plaintiffs and warning them of the potential of further negative repercussions to their employment with the District arising out of their speech, which lies clearly within the First Amendment's protection of freedom of expression and academic freedom. Furthermore, Defendant Hine knew or should have known that he was violating long-established principles of constitutional law with respect to his conduct.  In addition, Hine has continued to retaliate against Plaintiffs regarding their exercise of their First Amendment rights by, among other things, interfering with Plaintiffs' requests for public records concerning the expenditure and allocation of grant funds and regarding the complaints against them.  Defendant Hine is sued in his official and individual capacities.

12.     Defendant Thomas J. Burke was, at all times relevant to this Complaint, employed as Chancellor of Kern Community College District.  As such, he is the District's chief executive officer, responsible for its administration and policymaking, including the conduct alleged herein.  Acting under color of state law, Defendant Burke authorized, acquiesced in, sanctioned, and supported the actions of Defendant Hine.  Furthermore, Defendant Burke knew or should have known that he was violating long-established principles of constitutional law with respect to his conduct.  Defendant Burke is sued in his official and individual capacities.

13.     Defendant Billie Jo Rice was and is, at all times relevant to this Complaint, employed as Vice President of Bakersfield College.  Rice retaliated against Plaintiffs regarding their exercise of their First Amendment rights by,

among other things, requesting that Dr. Garrett remove the publicly posted video of his September 12, 2019 speech, pressuring Plaintiffs from making requests for public records concerning the expenditure and allocation of grant funds, canceling a mediation session in retaliation for Dr. Garrett's appearance on a local radio show where he discussed matters of public concern including the aforementioned financial issues, deliberately mishandling Dr. Garrett's personal and confidential information, and interfering with Dr. Garrett's application for equivalency to teach in the fields of Interdisciplinary Studies and Ethnic Studies.  Defendant Rice's actions were in violation of Plaintiffs' First Amendment rights and in retaliation of their exercise of those rights.  Defendant Rice is sued in her official and individual capacities.

14.     Defendant Sonya Christian is the Chancellor of the Kern Community College District and has held that position since it was vacated by Defendant Burke. As such, she is the District's chief executive officer, responsible for its administration and policymaking, including the conduct alleged herein.  Before becoming Chancellor, she was the President of Bakersfield College.  As such, she was the College's chief executive officer, responsible for its administration and policymaking, including the conduct alleged herein.  While in these positions, she oversaw and directed, among others, defendants Rice and Hine and was complicit in and/or failed to act to prevent their violation of Plaintiffs' rights and as retaliation for Plaintiffs' exercise of their First Amendment rights as alleged herein.   She acted under color of state law and is sued in her official and individual capacities.

15.     Plaintiffs are informed and believe that DOES 1 through 50 are other officials and administrators employed by KCCD and Bakersfield College who are responsible for the improper actions against Plaintiff detailed below, or are necessary parties, and Plaintiff will amend this Complaint when their true identities are known.

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

1

**FACTUAL BACKGROUND**

2      16.    In addition to their roles as faculty members, Dr. Garrett was the

3 founder, and Professor Miller on the advisory board, of the Liberty Institute[1] – a

4 sanctioned campus organization that aims to promote and preserve freedom of

5 thought and intellectual literacy through the open discourse of diverse political

6 ideas with an emphasis on American ideals and western historical values.

7 Censorship is anathema to the Liberty Institute.

8      17.    In April of 2019, controversial stickers were anonymously posted

9 around the Bakersfield College campus, some of which stated such things as

10 "smash cultural Marxism" and as well as other right-of-center viewpoints.  The

11 stickers were removed by campus authorities.  This prompted a public debate, in

12 part through op-ed articles in the local press.  Certain faculty members and students

13 associated with the campus Social Justice Institute decried the stickers as "racist"

14 and "vandalism" and "hate crimes."  Dr. Garrett, on the other hand, publicly

15 questioned whether the stickers might actually be a protest of sorts against the use

16 of taxpayer funds to advance a one-sided partisan political agenda on campus.

17 Certain faculty members and students associated with the Social Justice Institute

18 responded to Dr. Garrett's comments by publicly accusing both him and Professor

19 Miller of advocating and enabling white supremacism.

20      18.    As this controversy progressed, and in lieu of ongoing salvos in the

21 local press, other faculty members sought to arrange a formal public debate

22 between Dr. Garrett on the one hand, and faculty associated with the Social Justice

23 Institute on the other including Professors Andrew Bond and Oliver Rosales.  Since

24 such a debate is precisely the sort of free exchange of ideas that he stands for, Dr.

25 Garrett readily agreed.  Bond and Rosales, however, refused to participate.

26

27 _____

28 [1] The Liberty Institute has since been renamed The Renegade Institute for Liberty.

- 7 -

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

19.   On September 12, 2019, with his counterparts having refused to participate, Plaintiff Garrett gave a public lecture on the Bakersfield College campus entitled, "The Tale of Two Protests: Free Speech and the Intellectual Origins of BC Campus Censorship."  The lecture discussed the intellectual justifications and strategies of censorship while drawing parallels to behavior at the college.  Plaintiff Miller delivered the introduction to Dr. Garrett's lecture.

20.   The event took place on campus and was well-attended by members of the college community and the public.  Professor Miller's introduction lasted approximately ten minutes.  Dr. Garrett's speech lasted approximately one hour and was followed by a vigorous audience question and answer period that lasted about forty-five minutes.

21.   During his lecture, Dr. Garrett discussed issues such as Marxism, free speech, and campus censorship.  A few minutes of his lecture also addressed what in his view was the expenditure of grant funds to the college to promote a partisan political agenda.  He identified certain Bakersfield College faculty including, among others, Bond and Rosales as the recipients of grant funds that were being directed to further partisan social justice agendas.  He called for an investigation into the expenditure of these funds at Bakersfield College.  Neither Dr. Garrett in his speech nor Professor Miller in her introduction at any time accused Bond or Rosales or anyone else at Bakersfield College of misappropriating these funds or fiscal improprieties or personally enriching themselves or of any illegal conduct.

22.   Criticism of the manner in which a public college or university prioritizes the expenditure of its funds is core speech protected by the First Amendment.

23.   Although differences of opinion were raised and discussed during the course of the event, at all times the exchange of ideas was civil and respectful.  The

September 12, 2019 lecture was an example of precisely the sort of "marketplace of ideas" that American college campuses are intended to exemplify.

### Bond and Rosales File Formal Complaints with Bakersfield College HR Regarding Plaintiffs' Speech from the September 12, 2019 Lecture.

24.    In October 2019, Professor Miller filed a public records request regarding various grants.

25.    Plaintiffs are informed and believe that, on October 11 and 19, 2019, respectively, Professors Bond and Rosales filed HR complaints against Dr. Garrett and Professor Miller arising out of the September 12, 2019 lecture.

26.    During November 2019, the Bakersfield College administration attempted to mediate the issues involving Dr. Garrett and Professor Miller and Professors Bond and Rosales.  However, rather than serve as a neutral mediator recognizing the First Amendment issues at stake, Defendant Rice instructed Plaintiffs to stop requesting public records relating to the grants and to remove the publicly posted video of the September 12, 2019 lecture.

27.    On December 3, 2019, Dr. Garrett gave a 30-minute radio interview in which he discussed the collapse of critical thinking in the academy and again criticized the manner in which Bakersfield College faculty were directing grant funds.  Dr. Garrett's comments during the radio interview were made as a private citizen on a matter of public concern.  Within a few days following this radio interview, Defendant Rice telephoned Dr. Garrett and Professor Miller individually and advised that she was discontinuing the informal resolution process.  She blamed Dr. Garrett's radio interview for this action.

28.    Plaintiffs are informed and believe and thereon allege that, at all relevant times, Defendant Rice reported directly to Defendant Christian and that her actions were performed at either the direction or with the acquiescence of Defendant Christian.

29.     Defendant Rice's actions were meant to, and in fact did, punish Plaintiffs and chill them from continuing to engage in speech on matters of public concern.

30.     Plaintiffs are informed and believe that, on or about January 6, 2020, Professor Bond and Rosales filed addendums to their complaints.

31.     To this day, Defendants have improperly refused to permit Dr. Garrett and Professor Miller to see the complaints that were made against them based on the spurious assertion that showing Plaintiffs the charges would somehow violate the privacy rights of the complainants.

***Defendant Hine, with the Designation, Direction, Knowledge and Acquiescence of Defendants Burke and Christian, Orders an Investigation into Plaintiffs' September 12, 2019 Speech.  Following the Investigation, Hine Punishes and Retaliates Against Plaintiffs Based Solely on the Exercise of Their First Amendment Rights.***

32.     Plaintiffs are informed and believe and thereon allege that, in early August 2020, Defendant Christopher W. Hine, with the designation, direction, knowledge and acquiescence of Defendants Burke and Christian and perhaps other officials of KCCD and Bakersfield College who will be identified as DOE Defendants, referred Professors Bond and Rosales' formal complaints against Dr. Garrett and Professor Miller for investigation as to whether some of their comments at the September 12, 2019 event constituted "unprofessional" conduct in violation of certain KCCD Board and Administrative Policies.

33.     On or about October 8, 2020, Hine issued a KCCD Administrative Determination containing the following statements and findings:

(a)     Professor Miller, in her introduction to Dr. Garrett's speech, made a number of statements implying that both Dr. Oliver Rosales and Professor

Andrew Bond "were improperly misusing grant funds and BC resources to finance various 'social justice' platforms."

       (b)    Dr. Garrett, during his speech, repeated the above allegations "in greater detail" (i.e., that Rosales and Bond were improperly misusing grant funds).

       (c)    Dr. Garrett's and Professor Miller's comments constituted allegations of "financial impropriety" and of misappropriation of grant funds by Rosales and Bond.

       (d)    Dr. Garrett and Professor Miller's purported accusations that Rosales and Bond had engaged in "financial improprieties" constituted unprofessional conduct.

       (e)    Dr. Garrett and Professor Miller made these accusations against Rosales and Bond "without giving them a reasonable chance to explain the grants in question or defend themselves."

       (f)    Dr. Garrett "made the situation worse by repeating the allegations on a radio station after Dr. Rosales and Professor Bond properly complained."

34.    Based upon the above statements and findings, Defendant Hine made the determination that Dr. Garrett and Professor Miller "engaged in unprofessional conduct, as defined in Section A.3 of Article Four of the CCA collective bargaining agreement, in their statements and allegations regarding misuse and misappropriation of grant funds by Dr. Rosales and Professor Bond."  Hine's conduct was based solely on Plaintiffs' statements on matters of public concern at the September 12, 2019 speech and in Dr. Garrett's radio interview, all of which constituted protected speech under the First Amendment.

35.    Having made the aforementioned "determination," Defendant Hine threatened that "the District will investigate any further complaints of policy and procedure violations and, if applicable, will take appropriate remedial action,

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

including but not limited to any discipline determined to be appropriate.  It is recommended that any videos of the September 12, 2019 presentation by Dr. Garrett with introduction by Professor Miller be removed from all district websites until all inaccurate or misleading allegations have redacted or deleted."

36.    Notwithstanding his threat of further discipline, Defendant Hine has never identified what statements of fact in Plaintiffs' presentation were inaccurate or misleading.  This is because Hine was and remains fully aware that Plaintiffs' statements were not inaccurate or misleading and that they were statements on matters of public concern protected by the First Amendment.  Indeed, for example, Plaintiffs are informed and believe and thereon allege that Hine was clearly aware that Dr. Garrett's statements regarding the allocation of funds to Kern Sol News since he negotiated the contract that allowed for the allocation of those funds. Moreover, Plaintiffs deny that any of their statements were inaccurate or misleading.

37.    Defendant Hine's Administrative Determination also invoked the threat of termination of Dr. Garrett's and Professor Miller's employment by referencing California Education Code § 87667, which provides that "A contract or regular employee may be dismissed or penalized for one or more of the grounds set forth in Section 87732."  One of the grounds set forth in Section 87732 is unprofessional conduct, which was precisely the determination found by Defendant Hine against Dr. Garrett and Professor Miller.

38.    In addition, Defendant Hine stated that the Administrative Determination and the Investigator's report will be referred to the President of Bakersfield College "to determine what disciplinary actions and remedial actions are necessary based upon the findings."

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

39.    Plaintiffs are informed and believe and thereon allege that Defendant Christian, the President of Bakersfield College at the time, was aware that Hine's findings were false.

40.    Plaintiffs are informed and believe and thereon allege that Defendant Christian was aware that Dr. Garrett's statements concerning the expenditure of grant funds were correct and that Bond and Rosales had been given the opportunity to participate in the program. Despite her knowledge that some or all of the findings were false, Christian acquiesced in the Administrative Determination, did nothing to correct the record, and nonetheless allowed the adverse consequences to Plaintiffs to proceed.

41.    Moreover, Defendant Hine further stated in the Administrative Determination that Rosales' and Bond's complaints were whistleblower complaints as provided in BP 7F, and that there are no appeal rights provided under BP 7F or AP 7F.

42.    In short, Defendant Hine reached findings and determinations that were pretextual and false and carried with them the threat of further discipline up to and including termination.  In addition, by classifying Bond and Rosales as so-called "whistleblowers" (defining "whistleblower" in a manner utterly foreign to both federal and California law), Defendant Hine left Dr. Garrett and Professor Miller exposed to charges of retaliation and termination in the event they tried to publicly defend themselves.

43.    Defendant Hine has since used the threat against Plaintiffs of being charged with retaliation and the sanctions that accompany a finding of retaliation to prevent or significantly limit Plaintiffs' right to public records requests.

44.    Thus, at the same time that Defendant Hine has withheld the complaints from Plaintiffs and has failed to identify the purported inaccuracies in Plaintiffs' speech, Hine has threatened Plaintiffs with further discipline should they

continue to request production of the very records that support their statements regarding KCCD's and Bakersfield College's grant expenditures.

45.    Defendant Hine's actions were meant to, and in fact did, punish and retaliate against Dr. Garrett and Professor Miller for the exercise of their First Amendment rights and chill them from continuing to engage in speech on matters of public concern.

### Defendants' Administrative Determination Contained Demonstrably False Assertions of Fact and Findings.

46.    Each of the statements and findings of the Administrative Determination was demonstrably false.

47.    Neither Dr. Garrett nor Professor Miller, during their presentation of September 12, 2019 (or during Dr. Garrett's radio interview) ever accused Rosales or Bond of improperly misusing grant funds other than his disagreement with their expenditure for partisan political purposes.

48.    Neither Dr. Garrett nor Professor Miller, during their presentation of September 12, 2019 (or during Dr. Garrett's radio interview), ever accused Rosales or Bond of financial improprieties or the misappropriation of grant funds.

49.    Neither Rosales nor Bond was denied a reasonable chance to explain the grants in question or defend themselves.  On the contrary, both Rosales and Bond were aware that the grant funding would be a topic at the presentation and were invited and encouraged to attend the September 12, 2019 event; yet both refused to participate.  Bond and Rosales expressly told other faculty that they chose not to participate in an effort to delegitimize Dr. Garrett's presentation.

50.    Notably, the Administrative Determination makes clear that the majority of Rosales' and Bond's complaints arising out of the September 12, 2019 presentation involved speech by Dr. Garrett and Professor Miller that even Defendant Hine had to conclude was protected under the First Amendment.

51.     Plaintiffs are informed and believe and thereby allege that Defendants have deliberately taken the position, as a false pretext for the violation of Plaintiffs' rights of free speech and academic freedom, that Dr. Garrett's and Professor Miller's speech regarding the expenditure of grant funds during the September 12, 2019 event constitutes defamation as to Rosales and Bond and is therefore not protected under the First Amendment.

52.     Defendants' assertion that Dr. Garrett's and Professor Miller's speech is unprotected defamation is demonstrably wrong inasmuch as Plaintiff plainly did not accuse Rosales and Bond of financial improprieties or the misappropriation of grant funds and because, to the extent that Plaintiffs discussed the expenditure of grant funds, their comments were both truthful and expressions of their opinions on a subject of significant public interest.

53.     Indeed, Plaintiffs are informed and believe and thereon allege that Defendants knew that Plaintiffs' comments regarding the expenditure of grant funds were true inasmuch as Defendants Burke and Christian and Vice President Zav Dadabhoy[2] had written letters of support for a grant directing funds to the Kern Sol News, and that during informal mediation between Professor Miller and Defendant Rice, Rosales openly admitted that Rosales funded the Kern Sol News and intended to continue doing so.  Furthermore, Plaintiffs are informed and believe that Defendant Hine drafted or prepared the contract facilitating that funding.  In short, despite knowing that Dr. Garrett's comments were true, Defendants nonetheless issued an Administrative Determination that completely mischaracterized Plaintiffs' statements, and censored, disciplined, and threatened them with further discipline thereby punishing them and chilling them from continuing to engage in speech on matters of public concern.

---

[2]  With the promotion of Sonya Christian to KCCD Chancellor, Zav Dadabhoy has since been named Interim President of Bakersfield College.

54.   Plaintiffs are informed and believe and thereby allege that Defendants, in particular Defendant Hine who is an attorney and the KCCD General Counsel, were and are fully aware that Dr. Garrett's and Professor Miller's speech on September 12, 2019 and Dr. Garrett's statements during the radio interview were fully protected under the First Amendment.   Defendants nonetheless deliberately mischaracterized Plaintiffs' speech in violation of their First Amendment rights in order to placate or "throw a bone" to Rosales and Bond so that they wouldn't feel their complaints had been effectively dismissed in their entirety as they should have been.

55.   Plaintiffs are informed and believe and thereby allege that Defendants, in particular Defendant Hine as an attorney and KCCD General Counsel, have deliberately misclassified Rosales and Bond as "whistleblowers" under KCCD Board Policy 7F in order to further placate them and enhance their status as complainants and to retaliate against Plaintiffs over the exercise of their right to free speech and academic freedom.

56.   Defendants' deliberate violation of Plaintiffs' First Amendment rights emboldened Bond to respond by sending a mass email to the campus community declaring victory over Dr. Garrett and Professor Miller by announcing KCCD's institutional support further censoring Plaintiffs, declaring Plaintiffs' demonstrably true statements as lies, and implicitly reinforcing Bond's damning and false allegations on campus that Plaintiffs were supporters of white supremacism.

***Defendants' Acts of Retaliation in Response to Plaintiffs' Exercise of Their First Amendment Rights Have Continued Unabated.***

57.   In addition to the above violations of Plaintiffs' First Amendment rights and retaliation for exercising those rights, Defendants' acts of retaliation against Plaintiffs in response to their exercise of their First Amendment rights continue to this day including, among other things, the following flagrant examples.

- 16 -

58.   In February 2021, despite knowing that the complaints against Plaintiffs were untrue, Defendant Hine blocked Plaintiff Miller's public records requests related to the complaints, investigation, and Administrative Determination. Indeed, in blocking these requests, Hine warned Plaintiffs that further requests for records could increase the likelihood that they would be charged with retaliation by the complainants.

59.   In March 2021, Dr. Garrett applied for equivalency to teach in the fields of Interdisciplinary Studies and Ethnic Studies.  Defendant Rice (as well as certain DOE administrators to be named later) carelessly, negligently, and deliberately mishandled and disseminated Dr. Garrett's confidential information related to that application, including his personal transcripts and Social Security Number, to individuals having no duties pertaining to his application and no right to see such information.

60.   Furthermore, in response to efforts by Bond and Rosales and others to derail Dr. Garrett's application on grounds that his protected viewpoints and personal background were inconsistent with Ethnic Studies, Rice retaliated against Dr. Garrett by attempting in various ways to obstruct his application to teach Ethnic Studies by, among other things, misrepresenting in bad faith the institutional need and requirements for teaching Ethnic Studies.

61.   Plaintiffs are informed and believe and thereon allege that Defendant Christian enjoys the final say in the manner in which Bakersfield College campus events are conducted in light of the Covid pandemic.  Christian has demonstrated her willingness to approve, personally and/or through the administrators who she supervises (i.e., DOE Defendants to be named when identified later) large-scale in-person events when they involve her political allies and the potential for financial benefit for the District while applying more restrictive Covid protocols to an event sponsored by Dr. Garrett.

62.   For example, in October 2021, the campus community was encouraged to attend in person the football homecoming game as well as pregame tailgating. Similarly, in September 2021, the Bakersfield College Performing Arts Department hosted a jazz festival attended by campus and influential community members including Dolores Huerta.  Furthermore, Bakersfield College hosted an in-person event involving a speech by Democratic Assemblyman Rudy Salas to which students and administrators were encouraged to attend.  In addition, Plaintiffs are informed and believe that Defendant Christian permitted its Athletics Hall of Fame dinner to go forward off campus without masks or social distancing or other Covid measures.

63.   In stark contrast, when Dr. Garrett invited a black conservative speaker, Kevin McGary, for an in-person on campus event in September 2021, he was not permitted to host the event in-person.  As a result, Dr. Garrett's funding for the event was damaged and the last minute notice of the change of venue was embarrassing and damaging as to the community relationships he was building. This is yet another example of the viewpoint discrimination and retaliation directed at Plaintiffs as a consequence of their September 12, 2019 speech.

***Plaintiffs Enjoy the Right to Academic and Personal Freedom Pursuant to their Collective Bargaining Agreement with KCCD and  the KCCD Board Policies and Administrative Policies.***

64.   KCCD Administrative Policy 7D2A provides, in relevant part, as follows: "Academic Freedom

No provision of this Administrative Procedure shall be interpreted to prohibit conduct that is legitimately related to the course content, teaching methods, scholarship, or public commentary of an individual faculty member or the educational, political, artistic, or literary expression of students in classrooms and public forums.  Freedom of speech and academic freedom are, however, not

- 18 -

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

limitless and this procedure will not protect speech or expressive conduct that violates federal or California antidiscrimination laws."

65.    The Administrative Determination expressly concedes that none of the allegations by Rosales and Bond, if true, would state a violation of state or federal antidiscrimination laws.

66.    Plaintiffs' collective bargaining agreement with KCCD provides, in relevant part, as follows:

"ARTICLE FOUR – PROFESSIONAL EXPECTATION

A.  Academic Freedom: The District, the Colleges and unit members will adhere to the following in regard to academic freedom:

1.  Education in a democracy depends upon earnest and unceasing pursuit of truth and upon free and unrestricted communication of truth…

4.  The District recognizes the fundamental right of the faculty member to be free from any censorship or restraint which might interfere with the faculty member's obligation to pursue truth and maintain his/her intellectual integrity in the performance of his/her teaching functions.

B.  Personal Freedom

2.  A faculty member shall be entitled to the full rights of citizenship and no religious or political activities, or lack thereof, of any unite member shall be used for purposes of disciplinary action.

***Defendants' Actions Have Caused a Deprivation of Rights, and Economic and Emotional Damage to Dr. Garrett and Professor Miller.***

67.    Each of Defendants' actions described above relating to the investigation and discipline, the threat of further discipline, and other acts of retaliation, were substantial and were motivated in whole or in part by Plaintiffs' constitutionally protected speech and expressive conduct.

68.   As a direct and proximate result of Defendants' acts, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression.  Defendants' actions were meant to, and in fact did, punish Dr. Garrett and Professor Miller and chill them from continuing to engage in speech on matters of public concern.

69.   Defendants have acted recklessly and with callous disregard for Plaintiffs' First Amendment rights by retaliating against them for speaking on matters of public concern.

70.   Defendants' actions damaged Plaintiffs' reputation, caused them stress and emotional injuries, including suffering from physical manifestations of stress and anxiety, consumed hours of time during which they have tried to defend themselves, and irreparably injured their constitutional rights to free speech and academic freedom.  Plaintiffs' ability to defend themselves, however, has been limited by the explicit and implicit threat of the Administrative Determination and the response to Plaintiffs' document requests that any attempts at defending themselves could be construed as retaliation against the purported "whistleblowers" thereby subjecting them to further punishment.

71.   As a result of Defendants' actions, Plaintiffs' names are now linked on the Bakersfield College campus with the false accusations that they engaged in unprofessional conduct and the false accusations that they accused Rosales and Bond of financial improprieties and financial misappropriation and that they are associated with white supremacist ideology.

72.   Plaintiffs have also been irreparably damaged in their profession as college professors.  At a time when college campuses are rife with "cancel culture" and knee-jerk reactions to anything perceived as insensitivity toward so-called marginalized faculty and students, Defendants' actions toward Plaintiffs will likely

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

limit their opportunities should they choose to seek future employment at other colleges or universities.

73.   Each of Defendants' actions, and taken together, constitutes an adverse employment action based on Plaintiffs' exercise of protected speech under the First Amendment.

74.   Plaintiffs have diligently attempted to mitigate their damages by consistently defending themselves against Defendants' actions, all to no avail.

## FIRST CAUSE OF ACTION

**Violation of Plaintiffs' First Amendment Right to Freedom of Speech through Retaliation**

**(42 U.S.C. § 1983 – Against Defendants in Their Individual Capacities)**

75.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-73 of this First Amended Complaint, as if set forth fully herein.

76.   By subjecting Plaintiffs, and each of them, to an investigation, an Administrative Determination containing demonstrably and pretextual false statements and findings, disciplinary action, and the threat of further disciplinary action including potential termination, Defendants, by policy and practice, and acting under color of state law, have retaliated against Plaintiffs substantially because of their exercise of their freedom of expression and have deprived them of their ability to freely express their ideas on issues of public concern at Bakersfield College.   In so doing, Defendants unconstitutionally have taken adverse employment actions against Plaintiffs in retaliation for their protected speech on matters of public concern.

77.   Despite (a) knowing that the First Amendment protected Plaintiffs' speech and (b) having no justifiable interest in regulating or punishing Plaintiffs' speech on matters of public concern or an interest that outweighs Plaintiffs' exercise of their First Amendment rights, Defendants discriminated against

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs for exercising their clearly established right to free speech on issues of public concern and the right to academic freedom as secured by the First and Fourteenth Amendments to the United States Constitution.

78.    As a direct and proximate result of Defendants' actions described above, Plaintiffs have been deprived of their constitutional rights.  They have suffered, and continue to suffer, emotional distress and economic injury.  They are, therefore, pursuant to 42 U.S.C. §§ 1983 and 1988, entitled to an award of compensatory damages, punitive damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

**Violation of Plaintiffs' First Amendment Right to Freedom of Speech through Retaliation**

**(42 U.S.C. § 1983 – Against Defendants in Their Official Capacities)**

79.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-76 of this Complaint, as if set forth fully herein.

80.    By subjecting Plaintiffs, and each of them, to an investigation, an Administrative Determination containing demonstrably and pretextual false statements and findings, disciplinary action, and the threat of further disciplinary action including potential termination, Defendants, by policy and practice, and acting under color of state law, have retaliated against Plaintiffs substantially because of their exercise of their freedom of expression and have deprived them of their ability to freely express their ideas on issues of public concern at Bakersfield College.  In so doing, Defendants unconstitutionally have taken adverse employment actions against Plaintiffs in retaliation for their protected speech on matters of public concern.

81.    Despite (a) knowing that the First Amendment protected Plaintiffs' speech and (b) having no justifiable interest in regulating or punishing Plaintiffs'

speech on matters of public concern or an interest that outweighs Plaintiffs'
exercise of their First Amendment rights , Defendants discriminated against
Plaintiffs for exercising their clearly established right to free speech on issues of
public concern and the right to academic freedom as secured by the First and
Fourteenth Amendments to the United States Constitution.

82.   As a direct and proximate result of Defendants' adverse employment
actions, Plaintiffs have suffered irreparable injury, including being deprived of their
constitutional rights to free expression.

83.   Plaintiffs have no adequate legal, administrative, or other remedy by
which to prevent or minimize the continuing irreparable harm to their First
Amendment rights.

84.   As a legal consequence of Defendants' violation of Plaintiffs' First
Amendment rights, which are irreparable *per se*, Plaintiffs are entitled to injunctive
relief including, but not limited to, mandating that Defendants publicly rescind the
Administrative Determination and its findings, remove from Plaintiffs employment
files and from the records of KCCD and Bakersfield College all records pertaining
to the Administrative Determination, requiring Defendants to rescind their
"recommendation" to remove the unedited video of their September 12, 2019
speech from all District websites, to withdraw the referral of the Administrative
Determination to the President of Bakersfield College for further disciplinary
action, and to cease obstruction of Plaintiffs' public records requests.

85.   Defendants' actions described above have created a present an ongoing
injury to Plaintiffs through a pattern of retaliation as well as damage to their
reputation that will likely impact their career prospects.  They are, therefore,
pursuant to 42 U.S.C. §§ 1983 and 1988, entitled to the injunctive relief requested
above, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THIRD CAUSE OF ACTION

### (Declaratory Judgment - 28 U.S.C. § 2201, *et seq.*)

86.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-84 of this Complaint, as if set forth fully herein.

87.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether Plaintiffs' speech described above constituted protected speech under the First Amendment and whether Defendants' retaliatory actions violate the Constitution.  A judicial declaration is, therefore, necessary and appropriate at this time.

88.    Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to speak without being subjected to the threat of further investigation and discipline based on pretextual grounds.

89.    To prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57, declaring that Defendants' conduct described above is unconstitutional.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Dr. Matthew Garrett and Professor Erin Miller respectfully request that the Court enter judgment against Defendants and provide Plaintiffs with the following relief:

1.    A declaratory judgment stating the Individual Defendants' actions described herein violated Plaintiff's right to free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution;

2.    A permanent injunction pursuant to 28 U.S.C. § 1343(a)  requiring Defendants to publicly rescind the Administrative Determination, remove from

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs' employment files and from the records of KCCD and Bakersfield College all records pertaining to the Administrative Determination, require Defendants to rescind their "recommendation" to remove the unedited video of their September 12, 2019 speech from all District websites, to withdraw the referral of the Administrative Determination to the President of Bakersfield College for further disciplinary action, and to cease all further retaliatory actions arising out of Plaintiffs' exercise of their First Amendment rights.

3.     Compensatory damages against Defendants in their individual capacities, in an amount to be proven at trial to compensate Plaintiffs for the Defendants' unconstitutional violation of their free speech rights and the retaliation they have suffered;

4.     Punitive damages against Defendants in their individual capacities to sanction their deliberate misconduct, and to deter Defendants and others from denying free speech rights to others similarly situated in the future;

5.     Plaintiff's reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, costs of suit and reasonable expenses;

6.     Pre and post-judgment interest at the maximum rate allowable by law; and

7.     Any other relief which this Court may deem just and proper.

Dated: December 13, 2021                    LEADER BERKON COLAO &
                                                                 SILVERSTEIN LLP


                                                                 By: /s/ Arthur I. Willner
                                                                 Arthur I. Willner
                                                                 Attorneys for Plaintiffs DR.
                                                                 MATTHEW GARRETT and
                                                                 PROFESSOR ERIN MILLER

- 25 -

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

# <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all claims triable by jury in this cause of action.

Dated: December 13, 2021                              LEADER BERKON COLAO &

SILVERSTEIN LLP

By:  /s/ Arthur I. Willner_____
Arthur I. Willner
Attorneys for Plaintiffs DR.
MATTHEW GARRETT and
PROFESSOR ERIN MILLER

**PLAINTIFFS' FIRST AMENDED COMPLAINT**



Declaration of Arthur I. Willner in Support of Plaintiffs' Notice of Motion and
Motion for Leave to File First Amended Complaint

Case No. 1:21-cv-00845-DAD-JLT

**Garrett et al v. Hine**

# EXHIBIT B

**From:** Arthur Willner <awillner@leaderberkon.com>
**Sent:** Tuesday, August 24, 2021 10:24 AM
**To:** David A. Urban <durban@lcwlegal.com>
**Subject:** Garrett, et al. v. Hine, et al.

**CAUTION - EXTERNAL EMAIL |** DO NOT reply, click links or open attachments unless you have verified the sender and kn

Dave:

I've had a chance to review in detail your anti-SLAPP motion to strike the state law causes of action of the Complaint in this action.  Although I realize that the Eastern District doesn't have the equivalent of the Central District's pre-filing meet and confer requirement, I'm surprised you didn't reach out to me to discuss your motion in advance of filing it.  It likely would have save both sides the time we've spent dealing with the issue.

In any event, while I completely disagree with the idea that the anti-SLAPP statute could apply to an action in which the plaintiffs allege that a public college's investigation and determination violated their First Amendment rights, I don't want the case to get sidetracked indefinitely over state law causes of action that aren't central to my clients' claims.  Therefore, we are willing to cast off the state law causes of action and file a First Amended Complaint limited to the federal claims.  My reading of Fed.R.Civ.P. 15(a) is that we need to do this either by stipulation or leave of court.  Please advise whether you are willing to withdraw your motion and stipulate to this amendment or if I have to file a motion seeking leave to amend.

Thanks.

Art

LEADER BERKON
COLAO & SILVERSTEIN LLP
**Arthur I. Willner, Esq.**
550 South Hope Street, Suite 1850
Los Angeles, CA 90071
P  213.234.1750 | F  213.234.1747
leaderberkon.com

This email message has been delivered safely and archived online by Mimecast.

4

Dave,

I'm just following up on our emails below.  Will you be able to advise me today whether you will withdraw your motion and stipulate to the amended complaint dropping the state law claims?  I need to know whether I have to start working on an opposition to your motion as well as preparing a motion for leave to amend.

Thanks.

Art

**LEADER BERKON**
**COLAO & SILVERSTEIN LLP**
Arthur I. Willner, Esq.
550 South Hope Street, Suite 1850
Los Angeles, CA 90071
P  213.234.1750 | F  213.234.1747
leaderberkon.com

---

**From:** David A. Urban <durban@lcwlegal.com>
**Sent:** Tuesday, August 24, 2021 5:51 PM
**To:** Arthur Willner <awillner@leaderberkon.com>
**Subject:** RE: Garrett, et al. v. Hine, et al.

Art, thank you for your e-mail and sharing your thoughts on this.  I will check back and follow up with you this week.  If you would like to discuss the case in the meantime, just let me know.

---

**David Urban** | Senior Counsel
 LIEBERT CASSIDY WHITMORE
6033 W. Century Boulevard, 5th Floor
Los Angeles, CA 90045
phone: 310.981.2045 | fax: 310.337.0837
durban@lcwlegal.com | vCard | bio | website

in FOLLOW US ON twitter

The preceding e-mail message (including any attachments) contains information that may be confidential, protected by the attorney-client privilege or other applicable privileges, protected by the right of privacy, or constitute other non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

3

**Arthur Willner**

| | |
|---|---|
| **From:** | Arthur Willner |
| **Sent:** | Friday, August 27, 2021 7:23 PM |
| **To:** | David A. Urban |
| **Subject:** | RE: Garrett, et al. v. Hine, et al. |

Dave,

Thanks for updating your position on your anti-SLAPP motion and on plaintiffs' intention to file a motion to amend pursuant to Rule 15(a).

Your comment that "A motion to amend under Fed. R. Civ. P. 15(a) would contravene the anti-SLAPP procedures" is exactly my point. The Ninth Circuit has specifically addressed this question and has found that this issue is governed by federal law. I would urge you to reconsider your decision by reviewing *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("As *Vess* implicitly suggests, granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would *directly collide* with Fed.R.Civ.P. 15(a)'s policy favoring liberal amendment . . . Moreover, the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint. If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants." (Emphasis added.) See also *Sanchez v. Law Office of Armo*, No. 1:20-cv-00163-NONE-SKO, 2021 WL 1214559, *17 (E.D. Cal. March 31, 2021) ("Here, as this is Plaintiff's initial complaint, the Ninth Circuit requires that Plaintiff be given leave to amend the dismissed claim." Citing *Verizon*.)

Binding Ninth Circuit law permits my clients to file a first amended complaint to eliminate the state law claims that your anti-SLAPP motion is contesting. Based on the wording of Rule 15(a)(1),(2), I believe that we are required to either stipulate to the filing of the amended complaint or I have to file a motion for leave of court (which strikes me as a needless waste of time). Unless you can offer contrary authority on this issue or believe that I have misread the above case law, I would ask that you confirm that you will withdraw your motion and stipulate to the filing of a first amended complaint that will no longer assert the state law claims you are challenging.

BTW, I saw your footnote 1 regarding your reason for not conducting a meet and confer. My point wasn't that the anti-SLAPP statute required it. It was that we both practice in a district in which a meet and confer is mandatory and standard practice irrespective of the fact that the Eastern District does not have the same requirement.

I look forward to hearing from you.

Best regards,

Art

**LEADER BERKON**
**COLAO & SILVERSTEIN** LLP
**Arthur I. Willner, Esq.**
550 South Hope Street, Suite 1850
Los Angeles, CA 90071
P  213.234.1750 | F  213.234.1747
leaderberkon.com

---

**From:** David A. Urban <durban@lcwlegal.com>
**Sent:** Friday, August 27, 2021 4:53 PM
**To:** Arthur Willner <awillner@leaderberkon.com>
**Subject:** RE: Garrett, et al. v. Hine, et al.

Art, I checked back this week and in response to your question, Defendants plan to keep the anti-SLAPP motion on file.  We described in footnote 1 of the motion the reasons for not conducting a meet-and-confer.

A motion to amend under Fed. R. Civ. P. 15(a) would contravene the anti-SLAPP procedures.  If you would like to set a time to meet-and-confer on that motion, though, we can do so.

---

**David Urban** | Senior Counsel
LCW LIEBERT CASSIDY WHITMORE
6033 W. Century Boulevard, 5th Floor
Los Angeles, CA 90045
phone: 310.981.2045 | fax: 310.337.0837
durban@lcwlegal.com | vCard | bio | website

 FOLLOW US ON twitter

The preceding e-mail message (including any attachments) contains information that may be confidential, protected by the attorney-client privilege or other applicable privileges, protected by the right of privacy, or constitute other non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Arthur Willner <awillner@leaderberkon.com>
**Sent:** Friday, August 27, 2021 9:34 AM
**To:** David A. Urban <durban@lcwlegal.com>
**Subject:** RE: Garrett, et al. v. Hine, et al.

2

Declaration of Arthur I. Willner in Support of Plaintiffs' Notice of Motion and Motion for Leave to File First Amended Complaint

Case No. 1:21-cv-00845-DAD-JLT

**Garrett et al v. Hine**

# EXHIBIT C

**Arthur Willner**

---

| | |
|---|---|
| **From:** | David A. Urban <durban@lcwlegal.com> |
| **Sent:** | Thursday, November 11, 2021 12:37 PM |
| **To:** | Arthur Willner |
| **Subject:** | Re: Garrett/Miller |

Art, thank you for your email - I was planning to call you this week.  Can you talk about case status and the mediation either this afternoon some time after 2:00 pm or tomorrow.  We will talk about the amended complaint as well.  If you let me know a convenient time, I can call you then.

> On Nov 11, 2021, at 7:14 AM, Arthur Willner <awillner@leaderberkon.com> wrote:

**CAUTION - EXTERNAL EMAIL |** DO NOT reply, click links or open attachments unless you have verified the send

Dave:

It was extremely disappointing that this matter wasn't resolved through mediation.  In my view, this could and should have been turned into a win for both sides.

Please advise whether your clients will stipulate to the filing of our First Amended Complaint or if you will force me to file a motion for leave to amend, which as you know will almost certainly be granted.

Thanks.

Art

<image001.png>
**Arthur I. Willner, Esq.**
550 South Hope Street, Suite 1850
Los Angeles, CA 90071
P  213.234.1750 | F  213.234.1747
leaderberkon.com

This email message has been delivered safely and archived online by Mimecast.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.