UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW GARRETT, et al., | No. 1:21-cv-0845-DAD-BAK |
| Plaintiffs, | |
| v. | <u>ORDER AWARDING ATTORNEYS' FEES</u> |
| CHRISTOPHER W. HINE, et al., | |
| Defendants. | |

On June 8, 2022, this court issued an order granting defendants' request for attorneys' fees pursuant to California's anti-SLAPP statute. (Doc. No. 32.) This matter is now before the court following the submission of supplemental briefing by the parties regarding what the reasonable attorneys' fees awarded in this action should be. (Doc. Nos. 33, 36.) For the reasons explained below, the court will award $11,310.87 in attorneys' fees to defendants.

**BACKGROUND**

The court will briefly summarize the underlying facts and procedural history of this case below for the sake of clarity. Kern Community College District ("District") is a public community college district. (Doc. No. 9-1 at ¶ 2.) Plaintiffs Matthew Garrett and Erin Miller are, and at all relevant times were, full-time tenured professors in the District's History Department. (*Id.*) Plaintiffs both teach at Bakersfield College, which is one of several community college campuses located within the District. (*Id.*) On September 12, 2019, plaintiffs presented a lecture

1

on the Bakersfield College campus, in which they made statements suggesting that their colleagues, professors Oliver Rosales and Andrew Bond, were improperly misusing grant funds and college resources to finance social justice platforms. (Doc. No. 1 at ¶¶ 17, 18.) In October 2019, the District's human resources department received administrative complaints by professors Rosales and Bond, wherein they complained about the conduct and accusations made during plaintiffs' September 12, 2019 lecture. (Doc. No. 9-1 at ¶ 4.)

In August 2020, defendant Christopher W. Hine—in his capacity as General Counsel of the District—initiated an investigation via a third-party in order to determine whether plaintiffs' speeches and accusations violated District policy. (*Id.* at ¶ 8.) The third-party investigation concluded that plaintiffs had engaged in misconduct in making the allegations against professors Rosales and Bond. (*Id.*) Therefore, on October 8, 2020, defendant Hine issued an "Administrative Determination," in which it was concluded that professors Rosales and Bond had not misused funds or District resources and that plaintiffs had "engaged in unprofessional conduct, as defined in Section A.3 of Article Four of the CCA collective bargaining agreement, in their statements and allegations regarding misuse and misappropriation of grant funds by Dr. Rosales and Professor Bond." (*Id.* at ¶ 9.) The Determination also stated that the District "will investigate any further complaints of policy and procedure violations and, if applicable, will take appropriate remedial action, including but not limited to any discipline determined to be appropriate." (*Id.*)

Plaintiffs filed their initial complaint in this action on May 25, 2021. (*Id.*) Therein, plaintiffs alleged that defendant Hine, at defendant Thomas J. Burke's urging, inappropriately responded to Professor Rosales and Professor Bond's complaints of misconduct against plaintiffs by commissioning the third-party investigation and issuing the "Administrative Determination." (Doc. No. 1 at ¶ 11.) Plaintiffs asserted six causes of action: (1) violation of plaintiffs' First Amendment right to freedom of speech; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) negligence; (5) intentional infliction of emotional distress; and (6) seeking a declaratory judgment pursuant to 28 U.S.C. § 2201. (*Id.*) Plaintiffs alleged that
/////

2

1  each of their causes of action "relat[ed] to the investigation and discipline, and threat of further
2  discipline." (*Id.* at ¶ 50.)

3  On August 13, 2021, defendants filed their motion to strike plaintiffs' complaint pursuant
4  to California's anti-SLAPP statute. (Doc. No. 9.) Specifically, defendants contended that
5  plaintiffs' state law causes of action (claims two, three, four, and five) were subject to that statute.
6  (*Id.* at 10.) On December 20, 2021, plaintiffs filed a motion seeking leave to file a first amended
7  complaint, which they represented would no longer include their previously asserted state law
8  causes of action. (Doc. No. 21.)

9  On June 7, 2022, this court granted plaintiffs' motion seeking leave to amend and denied
10  defendants' anti-SLALPP motion as having been rendered moot by the amendment of the
11  complaint. (Doc. No. 32.) Despite having denied defendants' anti-SLAPP motion as having been
12  rendered moot, the court granted defendants' request for attorneys' fees because defendants had
13  clearly prevailed on their anti-SLAPP motion given that plaintiffs had not shown "that the
14  purpose behind their [proposed] amendment [was] anything other than to dismiss frivolous
15  claims." (Doc. No. 32 at 13); *see Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998)
16  ("[W]here the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to
17  strike is pending, the trial court has discretion to determine whether the defendant is the
18  prevailing party for purposes of attorney's fees under [§ 425.16(c)].") Thus, having concluded
19  that defendants were entitled to attorneys' fees, the court ordered the parties to file supplemental
20  briefing as to the reasonable costs and fees incurred by defendants in connection with their anti-
21  SLAPP motion. (Doc. No. 32 at 15.) On June 21, 2022, defendants filed their supplemental brief
22  addressing the attorneys' fees in this action, and on July 5, 2022, plaintiffs filed a response
23  thereto. (Doc. Nos. 33, 36.)

## LEGAL STANDARD

25  "The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting
26  jurisprudence, a standard that is the fundamental starting point in determining a reasonable
27  attorney's fee." *Van Skike v. Director, Office of Workers' Comp. Programs*, 557 F.3d 1041, 1048
28  (9th Cir. 2009) (quoting *City of Burlingtion v. Dague*, 505 U.S. 557, 562 (1992)); *see also Rouse*

3

1  *v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2010), *abrogated on other grounds by*
2  *Marx v. General Revenue Corp.*, 568 U.S. 371 (2013). Accordingly, a district court is required
3  "to calculate an award of attorneys' fees by first calculating the 'lodestar' before departing from
4  it." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (quoting *Caudle v.*
5  *Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000)). "The 'lodestar' is calculated by
6  multiplying the number of hours the prevailing party reasonably expended on the litigation by a
7  reasonable hourly rate." *Id.* at 978 (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145,
8  1149 n.4 (9th Cir. 2001)); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.
9  2008) ("The number of hours to be compensated is calculated by considering whether, in light of
10 the circumstances, the time could reasonably have been billed to a private client."); *Caudle*, 224
11 F.3d at 1028; *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). Applying these
12 standards, "a district court should exclude from the lodestar amount hours that are not reasonably
13 expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v.*
14 *Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461
15 U.S. 424, 434 (1983)); *see also Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir.
16 2007).
17     The lodestar figure is presumptively reasonable. *Dague*, 505 U.S. at 562 ("We have
18 established a 'strong presumption' that the lodestar represents the 'reasonable' fee . . . ."); *Rouse*,
19 603 F.3d at 704; *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009). Accordingly,
20 "[a]djustments to the lodestar amount are allowed only if circumstances warrant . . . and are
21 reserved for rare or exceptional cases." *Rouse*, 603 F.3d at 704 (internal quotation marks and
22 citations omitted). In light of these governing standards, any adjustments to the lodestar must be
23 carefully tailored, drawing from a finite pool of factors relevant to the reasonableness
24 determination and only to the extent a factor has not been subsumed within the lodestar
25 calculation. *See Camacho*, 523 F.3d at 982 (citing the factors set forth in *Kerr v. Screen Extras*
26 *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). Those factors include the preclusion of other
27 employment by the attorney due to acceptance of the case; time limitations imposed by the client
28 or the circumstances; the amount of money involved and the results obtained; the "undesirability"

of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Rouse*, 603 F.3d at 705; *see also Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).

## ANALYSIS

"[D]efendants sued in federal court can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail." *Verizon Delaware, Inc.*, 377 F.3d at 1091. California's anti-SLAPP statute states:

> "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion."

Cal. Civ. Proc. Code § 425.16(c). "[W]here the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under" § 425.16(c). *Coltrain*, 66 Cal. App. 4th at 107. In its previous order, this court concluded that defendants were the prevailing party with respect to their anti-SLAPP motion. (*See generally* Doc. No. 32.) Plaintiffs do not dispute this conclusion. (Doc. No. 36 at 14) ("Plaintiffs agree that . . . having voluntarily dismissed their state law claims after being served with the anti-SLAPP motion, defendants are technically the 'prevailing' party as to those causes of action."). The court therefore turns to the reasonable attorneys' fees that should be awarded to defendants.

Defendants contend that they were forced to expend $41,813.50 in attorneys' fees in filing their anti-SLAPP motion and that they had to expend an additional $3,430 in attorneys' fees in preparing their supplemental briefing addressing the appropriate award of fees. (Doc. No. 33 at 6.) Defendants argue that this amount "is entirely reasonable and reflects the diligent effort counsel expended to litigate the anti-SLAPP Motion, and reply to [plaintiffs'] opposition." (*Id.*)

As addressed in the legal standard section above, the lodestar adjustment method applies to determine the appropriate amount of attorneys' fees awarded to prevailing defendants on an anti-SLAPP motion. *See Ketchum v. Moses*, 24 Cal.4th 1122, 1136 (2001) ("[B]ecause the anti-SLAPP provisions refer to attorney fees and costs without indicating any restrictions on how they

are to be calculated, we accordingly presume that the Legislature intended courts to use the prevailing lodestar adjustment method.").

Defendants contend that their attorneys at Liebert Cassidy Whitmore ("LCW") billed at the following rates:

- $350 to $360 per hour for Mr. Maddox, a partner
- $315 to $325 per hour for Mr. Urban, a senior counsel
- $230 to $245 per hour for Ms. Desmond, an associate
- $245 per hour for La Rita Turner, an associate
- $145 an hour for Kimberley Calitto, a paralegal

(Doc. No. 33 at 14.) Defendants represent that attorney Urban spent a total of 88.2 hours working on the anti-SLAPP motion; attorney Desmond expended a total of 43.7 hours working on that motion; and attorney Maddox spent a total of 6.8 hours working on the motion. (Doc. No. 33-2 at 4.) Defendants also contend that attorney Urban expended "no fewer than 5 hours preparing" the supplemental briefing with respect to the request for attorneys' fees; attorney La Rita Turner spent no fewer than 5 hours on that briefing; and that paralegal Kimberley Calitto expended no fewer than 4 hours doing the same. (*Id.* at 4–5.)

Plaintiffs do not appear to contest defense counsel's hourly billing rates. (*See* Doc. No. 36 at 12) ("Plaintiffs do not contest the reasonableness of defense counsel's hourly rates.") Rather, plaintiffs argue that "this was a garden-variety anti-SLAPP motion with little or no complexity or difficulty" that did not "require nearly 150 hours of work by three defense attorneys over the course of two and a half months" and "the level of success achieved through defendants' motion was essentially meaningless in the overall context of this litigation." (*Id.* at 4–5.) Plaintiffs also argue that defendants are not entitled to recover anything more than nominal fees in this action because they failed to meet and confer in advance of the filing of their anti-SLAPP motion. (Doc. No. 36 at 6.) Plaintiffs contend that "despite knowing that the Court's Standing Order required that [defense counsel] meet and confer with plaintiffs' counsel before filing the anti-SLAPP motion, defense counsel proceeded with the filing based on their assumption that they were 'exempt' from this requirement due to their mistaken understanding of the law." (*Id.* at 10.) Had

defense counsel agreed to meet and confer, plaintiffs argue, "plaintiffs' counsel Willner would have explained . . . that the anti-SLAPP motion was unnecessary because plaintiffs were willing to dismiss the state law claims." (*Id.*)  According to plaintiffs, "[i]nstead, both sides have had to waste the time and money briefing an improperly filed motion followed by this briefing on the fee issue, not to mention the waste of judicial resources."[1] (*Id.*)  Notwithstanding their conclusion that no fees should be awarded in connection with defendants' anti-SLAPP motion, plaintiffs argue that if the court remains inclined to award attorneys' fees to defendants, then "given the minimal impact of the anti-SLAPP motion on the litigation as a whole . . ., [the court] should use its discretion to reduce the amount to a small percentage of the amount sought." (*Id.* at 17.)

---

[1] Plaintiffs spend a considerable amount of their supplemental brief arguing that defendants failed to meet and confer prior to filing their anti-SLAPP motion and that this omission "is sufficiently serious to warrant denial" of any attorneys' fees. (*Id.* at 6) (citing *American Career College, Inc. v. Medina*, No. 21-cv-698-PSG, 2021 WL 5263866, at *1–2 (C.D. Cal. Apr. 15, 2021)).  Plaintiffs devote nearly half of their substantive briefing with regard to attorneys' fees to this failure to "meet and confer" argument. (*See id.* at 6–11.)  Defendants previously addressed that argument in their reply in support of their anti-SLAPP motion. (*See* Doc. No. 25 at 6.)  Specifically, defendants contended that plaintiffs did not "rely on any specific meet-and-confer requirement in the Eastern District" and did not "refute that applicable case authority provides meet-and-confer requirements are inappropriate for Anti-SLAPP motions." (*Id.*) (citing *Trinity Risk Mgmt., LLC v. Simplified Lab. Staffing Sols., Inc.*, 59 Cal. App. 5th 995, 1008 (2021) ("[S]ection 425.16 does not require that the parties meet and confer before filing an Anti-SLAPP motion.")).  In response to that argument, plaintiffs now assert that the "anti-SLAPP statute does not contain or address any sort of exemption or exception from the otherwise applicable procedural meet and confer requirements of this Court." (Doc. No. 36 at 8.)  Plaintiffs point out that they raised this argument in their opposition to the anti-SLAPP motion, but that the court did not address plaintiffs' arguments in this regard in its June 8, 2022 order. (*Id.* at 11, n.1.)  The reason the court did not address plaintiffs' arguments in its June 8 order is because the court did not find plaintiffs' argument to be at all persuasive.  Not only does California law applicable to anti-SLAPP motions dictate that § 425.16 does not require parties to meet and confer, but here plaintiffs have not shown that defendants' purported failure to meet and confer had any impact on their ability to oppose the anti-SLAPP motion or would have altered the outcome of that motion.  Not only were plaintiffs granted multiple extensions of time in which to file their opposition to defendants' motion (Doc. Nos. 14, 17), but in their opposition, plaintiffs substantially opposed every aspect of defendants' motion.  *See Rezaipour v. County of Los Angeles*, No. 12-cv-05005-MWF-VBK, 2014 WL 12687111, at *2 (C.D. Cal. Aug. 26, 2014) (concluding that the plaintiff was not prejudiced by the defendant's failure to meet and confer as required by the applicable local rules because plaintiff nevertheless filed a timely and substantive opposition).  Ultimately, plaintiffs have provided no persuasive authority to support their argument that a movant's failure to meet and confer prior to filing an anti-SLAPP motion—a motion that the court has since denied—constitutes a proper ground for striking that motion outright.

7

1    Lastly, plaintiffs argue that the court should consider the financial resources of plaintiffs.  (*Id.*)
2    (quoting *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987)).  Plaintiffs
3    highlight that they are both history professors employed by the Kern Community College District.
4    (*Id.*)  Plaintiff Miller's taxable income in 2021 was $86,732, and she is a single mother who also
5    provides support for other members of her extended family.  (*Id.* at 18.)  Similarly, plaintiff
6    Garrett's net income in 2021 was approximately $95,000.  (*Id.*)

7         As an initial matter, the court finds that the nearly 150 total hours billed by defendants
8    with regard to their anti-SLAPP motion appears to be a somewhat bloated number of attorney
9    hours devoted to that task.  *See Scott v. Kelkris Associates, Inc.*, No. 2:10-cv-1654-WBS-DAD,
10   2012 WL 1131360, at *6 (E.D. Cal. Mar. 29, 2012) (finding 34.6 hours to be a reasonable amount
11   of time expended on an anti-SLAPP motion); *Harper v. Lugbauer*, No. 11-cv-01306-JW, 2012
12   WL 1499174, at *3 (N.D. Cal. Apr. 9, 2012) (finding 26 hours to be a reasonable amount of time
13   expended on an anti-SLAPP motion); *but see Shepard v. Miler*, No. 2:10-cv-1863-WBS-JFM,
14   2011 WL 1740603, at *7 (E.D. Cal. May 5, 2011) (finding 234.8 hours was a reasonable amount
15   of time for defendants' counsel to expend on an anti-SLAPP motion).

16        Regardless of the number of hours spent in connection with the motion and the request for
17   fees related to it by defendants, the court finds that the rates employed by defendants' counsel in
18   calculating the lodestar are, for the most part, reasonable.  *See Freshko Produce Servs., Inc. v.*
19   *ILA Prods., Inc.*, No. 1:19-cv-00017-DAD-BAM, 2021 WL 4033176, at *4 (E.D. Cal. Sept. 3,
20   2021) (finding that hourly rates of $350 for an attorney with over 30 years of experience, $250 for
21   an attorney with seven years of experience, $250 for an attorney with 3 years of experience, and
22   $150 for a paralegal with over 30 years of experience were reasonable); *C & C Properties v. Shell*
23   *Pipeline Co.*, No. 1:14-cv-01889-DAD-JLT, 2019 WL 6341047, at *20–21 (E.D. Cal. Nov. 27,
24   2019) (concluding that an hourly rate of $400 is appropriate for an attorney who had been
25   practicing law for twelve years "without any showing that [the attorney] had substantial relevant
26   prior experience"; an hourly rate of $500 is appropriate for an attorney who had been practicing
27   law for twelve years and made a showing of "substantial and notable prior work experience"; and
28   an hourly rate of $300 is appropriate for an attorney with "slightly more" than five years of legal

experience); *Wallace v. Nationstar Mortgage, LLC*, No. 2:18-cv-02768-JAM-DB, 2021 WL 1578196, at *4 (E.D. Cal. Apr. 22, 2021) (finding that an hourly rate of $305 is reasonable for attorneys with "multiple years" of relevant litigation experience).  Notwithstanding the court's skepticism regarding the total hours spent on this matter, on balance, the court concludes that the lodestar presented by defendants, i.e., the number of hours expended multiplied by the hourly rate, is reasonable.

Despite the court's initial lodestar analysis, however, it is important to recognize that the court may adjust the lodestar calculation based on the twelve factors set forth in *Kerr*, 526 F.2d 67.  *See Adtrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 WL 1921774, at *9 (N.D. Cal. Mar. 24, 2020).  The *Kerr* factors include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Kerr*, 526 F.2d at 70.  Notably, however, "courts have determined that at least five of the *Kerr* factors have been deemed 'subsumed in the initial lodestar calculation.'"  *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1182 (N.D. Cal. 2004) (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)).  These factors include "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement."  *Morales*, 96 F.3d at 364 n.9 (internal quotation and citations committed).  Nonetheless, review of the *Kerr* factors remains the appropriate procedure for considering a request for a fee-award adjustment.  *Clark v. City of Los Angeles*, 803 F.2d 987, 990 & n.3 (9th Cir. 1986).  When determining whether to adjust attorney's fees, "[t]he district court should discuss only those *Kerr* factors that are relevant to the court's decision."  *Bay Area Painters and Tapers Pension Trust Fund v. Delta City Drywall*, No. 10-cv-1043-JSW-JL, 2011 WL 13243837, at *5 (N.D. Cal., Mar. 15, 2011) (citation omitted).

Here, the court focuses solely on the "results obtained" *Kerr* factor.  With regard to the results obtained here, plaintiffs contend that the anti-SLAPP motion's sole goal was to dismiss plaintiffs' state law claims.  (Doc. No. 36 at 16.)  Plaintiffs emphasize that this goal is minor in comparison to the broader litigation at issue here because their First Amendment claims "remain the focus of the case irrespective of the absence of the state law causes of action." (*Id.*)  Plaintiffs contend that even absent the state law claims, "[t]he same written discovery will be propounded; the same depositions of Kern Community College District personnel will be taken; the same documents will be produced; and ultimately the same motion(s) for summary judgment will be filed on the First Amendment questions." (*Id.* at 16–17.)  Plaintiffs also stress that their first amended complaint sought to voluntarily dismiss their state law claims, which would have achieved the same goals as defendants' anti-SLAPP motion without wasting the court's time and resources.  (*Id.* at 15.)

Defendants counter that their anti-SLAPP motion "induced Plaintiffs to drop all of their state law claims." (Doc. No. 33 at 16.)  "In doing so, Defendants vindicated the purpose of the Anti-SLAPP statute to prevent assertion of claims that lack a probability of success and serve to chill speech rights in various contexts, including administrative contexts." (*Id.*)  Defendants are quick to point out that "[t]he dual purpose of this mandatory attorney fee award is to discourage meritless lawsuits and to provide financial relief to the victim of a SLAPP suit by imposing the litigation costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech." (*Id.* at 19) (quoting *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (quotation marks omitted)).

Plaintiffs' arguments are, at least in part, persuasive.  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.  Of course, there is no debate that plaintiffs' state law claims to which the anti-SLAPP motion applied were frivolous.  Nonetheless, those state law claims were also not particularly relevant to the greater underlying First Amendment claims at issue in this case.  Indeed, plaintiffs were more than willing to drop their state law claims as soon as they realized those claims were susceptible to an anti-SLAPP motion.  (*See* Doc. No. 36 at 15.)  On the

other hand, that appears to be exactly what defendants are arguing when they assert that it took an anti-SLAPP motion to induce plaintiffs to voluntarily dismiss their state law claims.  Based on these competing arguments, the court will significantly reduce—but not eliminate—the awarded attorneys' fees.

The court of course recognizes the risk that reducing the award will "dilute the anti-SLAPP statute's purpose of encouraging defendants to hire private counsel to protect their free speech rights." *Shepard*, 2011 WL 1740603, at *6.  However, the court also recognizes that the plaintiffs in this case are individuals and a court "should consider the financial resources of the plaintiff in awarding fees to a prevailing defendant . . . when the fee request against an individual plaintiff is as sizable as the one involved here." *Miller*, 827 F.2d at 621.  "While an award of attorney's fees for a frivolous lawsuit may be necessary" to fulfill the deterrent purposes of California's anti-SLAPP statute, "the award should not subject the plaintiff to financial ruin." *Id.* Particularly in light of the results obtained here, a significant reduction in the requested fee award appears warranted.  As such, the court will reduce defendants' awarded attorneys' fees by 75%, to a total of $11,310.87. [2]

## CONCLUSION

For the reasons set forth above, defendants are awarded $11,310.87 in attorneys' fees.

IT IS SO ORDERED.

Dated:  **July 14, 2022**

UNITED STATES DISTRICT JUDGE

---

[2] This reduction is also in line with anti-SLAPP attorneys' fees awarded in other cases.  *See, e.g.*, *Kelkris Associates, Inc.*, 2012 WL 1131360, at *6 (finding $6,859.00 to be reasonable in light of a successfully brought anti-SLAPP motion to strike); *Harper*, 2012 WL 1499174, at *4 (finding $8,450.00 to be reasonable in light of an anti-SLAPP motion and the subsequent reply filed).